**Criminal Notice of Appeal - Form A**

# NOTICE OF APPEAL

United States District Court

Southern District of New York

Caption:

United States of America v.

Natalia Bardakova

Docket No.: 22-cr-518 (PKC)

Hon. P. Kevin Castel
(District Court Judge)

Notice is hereby given that Natalia Bardakova appeals to the United States Court of Appeals for the Second Circuit from the judgment ____, other |X   Opinion and order denying motion to dismiss the indictment
(specify)
entered in this action on July 25, 2024.
(date)

RECEIVED JUL 3 1 2024 S.D.N.Y - APPEALS

This appeal concerns: Conviction only |___|   Sentence only |___|   Conviction & Sentence |___|   Other |X|

Defendant found guilty by plea |   | trial |   | N/A |X|

Offense occurred after November 1, 1987?  Yes |X   No |   N/A |

Date of sentence: _____  N/A |X|

Bail/Jail Disposition: Committed |___   Not committed |   | N/A |X


Appellant is represented by counsel? Yes X  | No |   If yes, provide the following information:

| | |
|---|---|
| Defendant's Counsel: | Robert J. Anello |
| Counsel's Address: | Morvillo Abramowitz Grand Iason & Anello P.C. |
| | 565 Fifth Avenue, New York, NY 10017 |
| Counsel's Phone: | (212) 856-9600 |
| Assistant U.S. Attorney: | Vladislav Vainberg |
| AUSA's Address: | United States Attorney's Office, Southern District of New York |
| | 26 Federal Plaza, 37th Floor, New York, NY 10278 |
| AUSA's Phone: | (212) 637-1029 |

_____
Signature

# U.S. District Court

## New York Southern - Manhattan

Receipt Date: Jul 31, 2024 4:13PM

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C. FBO N. BARDAKOVA

| Rcpt. No: 31542 | | Trans. Date: Jul 31, 2024 4:13PM | | | Cashier ID: #SS |
|---|---|---|---|---|---|
| **CD** | **Purpose** | **Case/Party/Defendant** | **Qty** | **Price** | **Amt** |
| 203 | Notice of Appeal/Docketing Fee | | 1 | 605.00 | 605.00 |

| **CD** | **Tender** | | | | **Amt** |
|---|---|---|---|---|---|
| CH | Check | #53381 | 07/31/2024 | | $605.00 |
| | | | Total Due Prior to Payment: | | $605.00 |
| | | | Total Tendered: | | $605.00 |
| | | | Total Cash Received: | | $0.00 |
| | | | Cash Change Amount: | | $0.00 |

**Comments:** 22CR00518 PKC 3

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

**CERTIFICATE OF SERVICE**

I, Courtney D. Morphet, hereby certify that on July 31, 2024, I caused a true and correct copy of the Notice of Appeal to be served by Federal Express and email on the following counsel of record:

> AUSA Vladislav Vainberg
> United States Attorney's Office
> Southern District of New York
> 26 Federal Plaza
> New York, NY 10278

Courtney D. Morphet

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

              22-cr-518 (PKC)

   -against-         OPINION AND ORDER

NATALIA BARDAKOVA,

      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

   On September 28, 2022, defendant Natalia Bardakova was charged in an indictment with (1) participating in a conspiracy to assist the Russian oligarch Oleg Vladimirovich Deripaska in evading sanctions imposed by the President of the United States and (2) making false statements to Special Agents from the Federal Bureau of Investigation ("FBI") who interviewed her in the United States regarding her participation in the alleged conspiracy. Approximately three days after Bardakova was interviewed by the FBI, she left the United States and has resided in Russia since then. Through counsel, she has moved to dismiss the indictment, Rule 12(b)(3), Fed. R. Crim. P. The government opposes the motion on the ground, among others, of the fugitive disentitlement doctrine. For the reasons that will be explained, Bardakova's motion will be denied.

BACKGROUND

   The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1708, addresses the authority of the President of the United States to regulate international economic transactions during war or national emergencies. (Indictment ¶ 7.) In

2014, Russia invaded the Crimean Peninsula of Ukraine. (Id. ¶ 10.) Pursuant to IEEPA, President Obama issued Executive Orders 13660, 13661, and 13662. (Id. ¶¶ 8-10.) The President found that those "persons who have asserted governmental authority in the Crimean region without the authorization of the Government of Ukraine" constitute an unusual and extraordinary threat to the national security and foreign policy of the United States and declared a national emergency to deal with that threat. Executive Order 13660, 79 Fed. Reg. 13493 (Mar. 6, 2014).

To address this national emergency, Executive Order 13660 "blocked all property and interest in property that were then or thereafter came within the United States" of individuals determined by the United States Secretary of the Treasury to be complicit in undermining the institutions and sovereignty of Ukraine. (Id. ¶ 8.) With respect to these "Specially Designated Nationals" ("SDNs"), the Executive Order prohibited the "making of any contribution or provision of funds, goods, or services by, to, or for the benefit of" the SDN and "the receipt of any contribution or provision of funds, goods, or services from any such person." (Id.) Executive Orders 13661 and 13662 expanded the list of SDNs to include officials of the Russian government and any individual operating in the energy sector of the Russian economy. (Id. ¶¶ 10, 14.) To implement the Ukraine Executive Orders, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") published a list of individuals whose property and interests would be blocked (the "SDN and Blocked Persons List"). (Id. ¶ 12.)

On April 6, 2018, OFAC designated Deripaska as a SDN. (Id. ¶ 14.) According to the indictment, Deripaska employed a United States citizen and resident, Olga Shriki, and a Russian national, Natalia Bardakova, to facilitate his evasion of the sanctions. (Id. ¶ 19.) Bardakova served as a liaison between Deripaska and Shriki; her role was to send instructions

and payments to Shriki on Deripaska's behalf. (Id.) She directed Shriki to purchase and send flower and gift deliveries on Deripaska's behalf to Deripaska's social contacts and instructed him to purchase items in the United States for Deripaska's personal use. (Id. ¶¶ 19(b)-19(c).)

In 2020, Deripaska and his romantic partner Ekaterina Voronina sought to arrange the birth of their child in the United States. (Id. ¶ 19(d).) Bardakova and Shriki facilitated the arrangements by renting a two-story penthouse apartment in Beverly Hills, California for Voronina, obtaining childcare in the form of at least five nannies and a housekeeper, and managing Voronina's arrival and departure from the United States on a private jet. (Id. ¶ 19(e).) Deripaska provided the financing for these arrangements, and Bardakova coordinated the transfer of $170,000 to Shriki for the expenses. (Id. ¶ 19(f).)

In 2022, Deripaska and Voronina also sought to have their second child born in the United States. (Id. ¶ 19(i).) On May 13, 2022, Bardakova travelled to the United States to coordinate the arrangements for Voronina's stay. (Id. ¶ 19(j).) She rented a house in Beverly Hills, California for Voronina. (Id.) To pay for the rental, Bardakova coordinated approximately $229,000 in payments to intermediaries in Russia in order for a U.S.-based entity to fund the cost of the rental. (Id. ¶ 19(l).) Bardakova also arranged for a private jet to take Voronina, Deripaska's and Voronina's first child, and a nanny from Istanbul to Los Angeles for 160,000 Euros. (Id. ¶ 19(m).)

On June 2, 2022, Voronina and her child landed in Los Angeles. (Id. ¶ 21.) Voronina was interviewed by officers from the U.S. Department of Homeland Security upon arrival. (Id. ¶ 22.) She was not admitted into the United States.

Bardakova, who had been living in the United States, was waiting to pick up Voronina at the Los Angeles Airport. (Id.) FBI agents met Bardakova, and accompanied her to

her hotel where they interviewed her in the lobby. (Id.) Bardakova told the agents that she had traveled to the United States to facilitate arrangements for Voronina to give birth in the United States. (Id.) She told the agents that she had never directly communicated with Deripaska or visited Deripaska's property located at 12 Gay Street, New York, New York. (Id.) Bardakova also told the agents that she did not assist in Voronina's trip to the United States in 2020 and did not send any money from her accounts for expenses from the 2020 trip. (Id.) On June 6, 2022, three days after the interview by FBI agents, Bardakova left the United States and has not returned since.

On September 29, 2022, an indictment was unsealed charging Bardakova with conspiracy to violate IEEPA and false statements to special agents of the FBI on June 2, 2022; Deripaska, Voronina, and Shriki were charged in the same indictment with related crimes. (ECF 2.) An arrest warrant was issued for all four defendants, but only Olga Shriki was arrested. (September 29, 2022 Minute Entry.) As noted, Bardakova has not returned to the United States and has not appeared in this Court or otherwise submitted to this Court's jurisdiction. On November 3, 2022, counsel appeared on Bardakova's behalf, and moved to dismiss the charges in the indictment against her (Counts One and Three). (ECF 31-35.)

## BARDAKOVA IS A FUGITIVE AND IS NOT ENTITLED TO A JUDICIAL DETERMINATION OF HER CLAIMS

The flight of a fugitive disentitles her "to call upon the resources of the Court for determination of [her] claims." Molinaro v. New Jersey, 396 U.S. 365, 366 (1970) (per curiam). Under the common law doctrine of fugitive disentitlement, the Court "may decline to entertain the claims of a defendant who is a fugitive from justice." United States v. Bescond, 24 F.4th 759, 764 (2d Cir. 2021). Several rationales underly the common law doctrine of fugitive

disentitlement. A judgment entered against a fugitive is impossible to enforce. Degen v. United States, 517 U.S. 820, 824 (1996). Disentitlement discourages escape and encourages voluntary surrender. Id. It also promotes the efficient, dignified operations of the federal courts: "[f]ederal courts do not play 'catch me if you can.'" United States v. Martirossian, 917 F.3d 883, 885 (6th Cir. 2019). In applying the doctrine, the Court must first determine whether Bardakova is a fugitive. Bescond, 24 F.4th at 771. If so, the Court may then exercise its discretion to disentitle her from a judicial determination of her claims if doing so serves the objectives of the fugitive disentitlement doctrine. Id.

The Second Circuit recognizes the two common-law definitions of fugitives: "traditional fugitives" and "constructive-flight fugitives." Id. A traditional fugitive is "a person who, having committed a crime, flees from the jurisdiction of the court where a crime was committed or departs from his usual place of abode and conceals himself within the district." Id. A constructive-flight fugitive is "a person who allegedly committed crimes while in the United States but who was outside the country—for whatever reason—when she learned that her arrest was sought and who then refused to return to the United States in order to avoid prosecution." Id. at 772. "Fugitivity implies some action by [the defendant] to distance herself from the United States or frustrate arrest." Id.

The Court concludes that Bardakova is a "traditional fugitive." She flew into Los Angeles, California on May 13, 2022 allegedly for the purpose of assisting Deripaska in evading the sanctions imposed under IEEPA. (Indictment ¶ 19(k).) Once she was physically present in the United States, she allegedly assisted Deripaska him in evading the sanctions. She found a rental house for Voronina and then coordinated $229,000 in payment to intermediaries in Russia in order for a U.S.-based entity to fund the cost of the rental. (Id. ¶ 19(l).) While physically

present in the United States, she was interviewed by the Federal Bureau of Investigation's Special Agents and lied to them. (Id. ¶ 22.) She thus committed both of the charged offenses (Counts I and III) while physically present in the United States. Then, three days after her interview with the Special Agents, she returned to Russia. She committed two crimes in the United States and then "distanced herself" from the United States after she learned that the FBI was looking into her actions relating to Deripaska and the mother of his child.

Bardakova's actions are fundamentally different than the defendant's actions in United States v. Bescond, 24 F.4th at 759. Defendant Bescond "was not in the United States while allegedly committing the charged conduct." Id. at 772. She did not take "some action . . . to distance herself from the United States or frustrate arrest." Id. at 771. As explained, Bardakova committed the crimes alleged in the indictment while in the United States and then, following her interview by FBI agents that alerted her that her actions were under scrutiny, left the United States. She thus qualifies as a fugitive.[1]

After concluding that a defendant is a fugitive, a district court's decision to disentitle the fugitive is discretionary. Bescond, 24 F.4th at 773. Disentitlement is warranted when it serves the purposes of the fugitive disentitlement doctrine: (1) "assuring the enforceability of any decision that may be rendered against the fugitive;" (2) "imposing a penalty for flouting the judicial process;" (3) "discouraging flights from justice and promoting the efficient operations of the courts;" and (4) "avoiding prejudice to the other side caused by the defendant's escape." Id. at 773-74.

---

[1] If the Court is wrong that Bardakova was a "traditional fugitive," then she is a "constructive-flight fugitive," because the crimes were committed in the United States and she is on notice that her arrest is sought as is implicit in her present motion to dismiss the indictment.

- 6 -

Disentitling Bardakova serves the purposes of the fugitive disentitlement doctrine. First, Bardakova's fugitive status means that it is unlikely that any decision rendered against her will be enforced; the "gravamen of [her] petition is the posture of heads I win, tails you'll never find me." Gao v. Gonzales, 481 F.3d 173, 177 (2d Cir. 2007) (internal quotation omitted). She resides in Russia, has not submitted to the Court's jurisdiction, and an adverse ruling would not affect her. Second, she has flouted the judicial process and exhibited disrespect for the laws of the United States. She allegedly entered the United States to assist Deripaska in evading lawfully imposed sanctions, did in fact assist Deripaska in doing so, lied to FBI Special Agents, and promptly returned to Russia once she became aware that her conduct attracted the attention of law enforcement. Third, disentitlement would discourage flights from justice by similarly situated defendants and promote the efficient operations of the courts. It disincentivizes a departure from the United States once the individual's conduct on U.S. soil is the subject of law enforcement inquiry. Fourth, Bardakova's return to Russia could have prejudiced the government. The government promptly filed the indictment in this case—Bardakova's interview with Special Agents of the FBI occurred on June 3, 2022, and the government filed this indictment on September 28, 2022. The government's prompt filing of this indictment mitigated the risk that witness's memories would fade or evidence would grow stale. But on balance, the factors tip decidedly in favor of disentitlement.

CONCLUSION

The Court concludes that Bardakova is a fugitive. In the exercise of its discretion, the Court has determined that disentitlement is warranted. Her motion to dismiss the indictment (ECF 34) is DENIED.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
July 24, 2024